Good morning, Your Honors. My name is Shelley Lattin. I represent the appellant, Cariselda Romero-Manzano. With the Court's permission, I'd like to reserve three minutes of rebuttal time. We'll try to help you, but keep your eye on the clock, OK? Excuse me? I say, we'll try to help you, but keep your eye on the clock. It goes down. I'll do that. Thank you. This case involves appellant's claims for enduring several years of sexual harassment by her supervisor. The appellee filed for summary judgment, arguing that Ms. Romero had not timely filed her EEOC bully charge within 300 days of the last sexual harassment event, and on the merits of the appellant's sexual harassment claim. The trial court granted the appellee's summary judgment motion, but on grounds not raised by either of the parties. I'd like to make three points relating to exhaustion and timeliness. First, when the district court dismissed the plaintiff's case, it failed to consider exceptions to the Title VII administrative requirement. Second, under the Title VII continuing violation doctrine, Ms. Romero has shown that she timely filed her charge within 300 days. And third, that Ms. Romero's state law claims were timely filed. Because they relate back to her original complaint. Relating to the administrative exception, there are, I'm going to ask you some questions here regarding your Title VII claim, and whether you made those allegations within the 300 day time period you just referenced from the last alleged unlawful employment practice, as is required under the statute. So let's go through the dates, if you don't mind. You filed your EEOC charge on December 30, 2013? Yes. 300 days prior to that is March 5, 2013. Correct. All right. Ms. Romero claimed the sexual harassment stopped in April of 2013. Yes, Your Honor. All right. Therefore, we're looking at a very narrow window of when you, on behalf of your client, would have to allege that some unlawful employment practice or harassment occurred. Do you agree? Agreed. OK. In your allegations, it seems like you only generally plead that Ms. Carrillo isolated your client, and you allege that the isolation occurred over several years without providing, from what I could see, any other detail. And so I'm just curious and questioning, is it a bar to your claims that you didn't specifically plead that Mr. Carrillo isolated your client in the fields in a way that was related to sexual harassment in the specific period that we're looking at, which is March 5 to April of 2013? No, Your Honor, I don't think that's a bar for two reasons. First, relating to the actual sexual harassment event of events of isolation, they did occur over a three-year period. And when we came to this March 5 date, it is correct that there is nothing in the record specifically regarding a violation that occurred between March 5 and April 3. However, this is a continuing violation because the hostile work environment continued right up to the point when Ms. Romero complained to the HR manager at Carlton Plants. When Ms. Romero reported the sexual harassment, she said to Siguenza, the human resources manager, I won't work with that man anymore. Fire me. Give me my last check. I won't work with him anymore. That indicates that that hostile work environment has continued right up to that point so that she did file within the 300 days. And even if that isn't the position that this court adopts, the case should be remanded to give Ms. Romero the opportunity to testify. Let me just ask you, though. Under a hostile workplace claim, it seems like we consider where the action might be one unlawful employment practice, might be part of one unlawful employment practice. And I'm just trying to figure out, isn't the alleged isolation by Mr. Carrillo very different than the other allegations of sexual proposition, I guess, that were referred to and that Ms. Romero alleged occurred prior? It seems like these two types of actions may be sufficiently distinct. I don't know, and that's why I'm asking this question, that they should not be considered the same type of employment actions, or how are they not so distinct? And have we ever held that isolation is similar to propositions for sex and other physical sexual harassment allegations that Ms. Romero alleges occurred prior? To answer your last question first, I'm not aware of any authority, although we would be happy to go back and try to address that specific question and see if we can find something for you. But following up on my colleague's question, you, of course, have an obligation to describe in some detail what allegedly happened. I think part of what, at least, I'm struggling with is that some are specific, but out of the time period. But the rest of them are quite vague, quite general. Do they meet the standard here? They do meet the standard. We do describe in our reply brief all the ways that isolating a sexual harassment victim is. I understand that in your reply brief. I'm talking about in the complaint. In the complaint? In the complaint. Isn't that where you have to make the allegations? We did make the allegation that we had exhausted our administrative remedies, and then we made the allegations that the sexual harassment events occurred up to that point. However, oh, I'm sorry. I was going to try to get to your question a little more directly and say that, yes, it is true that there is not an allegation in the complaint that says, on this date, between March 5 and April 3, on this date, this thing happened. But what Ms. Romero did testify to in her deposition is that the isolation happened frequently. And she should have the opportunity, if she needs to go back and amend her complaint to make that specific allegation, she should have the opportunity to do that, or have this case remanded so she has the opportunity to testify at trial. But there's two issues here. One is whether or not she was specifically alleged sufficiently. And second, whether or not isolation is sufficiently similar to the other acts to be considered one workplace, if it meets an unlawful workplace violation here. Yes, Your Honor, it does. So the isolation is part and parcel with the scenario of sexual harassment from Jose Carrillo. And that is demonstrated, again, by Ms. Romero's testimony at deposition that she was very afraid of Mr. Carrillo because he isolated her and put her in a position where he could come and sexually harass her. Specifically, what she testified to is that very frequently, he very frequently separated from my male workmates. And then she testified that she was afraid of him. That's at SCR 7 through 8. Counsel, with respect, you're talking about what she said in her deposition, what you said in the reprieve. But again, we get back to the complaint. That's where the allegations have to be made. And I have another question. I'll skip to this because this is an important one to me. I'm unaware of any case where our court has addressed the question of whether Rule 15c allows for the addition of a defendant instead of just substituting a defendant. Do you know of any case that allows that? In other words, you've got the wrong party served. You want to have the proper party served. But if you do that, is there a case law that says you can? And if that happens under the Supreme Court's Krupski case, would that relate back? If you are allowed to substitute a new defendant, would that relate back? It would relate back. And that's exactly what 15c1c allows. And this court has not specifically said we allow relation back to apply to an entirely new defendant who would be added. You're asking us to make new law on that. And what do you do with Krupski? Does Krupski, the Supreme Court case, allow relation back when you have a new party substituted? Yes, it does. There is nothing in Krupski. On what basis? Where in Krupski does it say that? I don't think that the Krupski court specifically said that a defendant could, or a new party could be added. But I don't think that Krupski stands for the proposition that it can't. There are cases in the Knights. I understand why you want that to be the case. I'm looking for some authority that says we can do that. I mean, it's a two-step process. If you don't substitute the correct defendant, you've got nothing, because one doesn't have any employees. But if we allow that and have a case that says that 15C says you can do that, then you have the problem, the timing that my colleague has talked to you about. How does the new defendant, how do those allegations relate back to what you had before? In other words, it's like they're newly served. So how can it relate back? It can relate back because the newly added party understood that the plaintiff had made a mistake, and that's what Krupski stands for. And if there's a mistake, whoever the added party is knows, probably from, in this case at least, it is clear that it seems that Carleton Plants knew that there had been a mistake. But I think to answer your question a little more directly, there is nothing that in 15C1C that prohibits an added defendant or an added new party. And in Krupski, they changed the defendant. They dismissed one defendant and changed it for another. But that shouldn't matter whether somebody is a new party is added or whether they're changed. Because if there's a mistake, it's just as likely that there was a mistake regarding the party that you've sued. And to keep both in the case makes more sense than dismissing one. Do you agree that for you to be successful, you have to both be able to substitute the new defendant and that new defendant's actions have to relate back to the time of the filing of the original complaint? Yes, Your Honor, I do agree. May I reserve, if there's no further questions? Yeah, yeah, yeah, you reserve the balance of your time. Could I just ask one question? Of course, Your Honor. Can you see me? I can see you, yes. I just want to put aside the legal issues for a moment. In reading and just reading the facts, it's hard to know exactly what it is that the employer did wrong. It seems to me that if you check the box for what an employer is supposed to do, they did it all. That doesn't mean they're necessarily freed of liability, depending on the relationship of the employee accused, whether a supervisory or just a co-worker. But it doesn't strike me that it's the kind of a case that would yield a significant verdict. The employer seems like a sympathetic party. And have you considered the possibility of any kind of settlement or mediation? Your Honor, we would be interested in mediation. That has not happened, but we're always interested in mediation. I would like to respond to that the actions of the employer in this case really were not supportive of a sexual harassment victim. We review that in our brief, but I wanted to point that out before I use up my last one second. Thank you, Your Honor. The judge is asking you.  OK, thank you. Thank you. We may give you a little bit, because you sum up part of your time here. But let's hear from the appellee. Good morning. Good morning. May it please the court, my name is Tricia Olson, and I'm here today on behalf of Carlton Plants, the appellee. And I would like to first address the conversation regarding isolation and the 300 days. I'd like to point out that the term isolation was first used in Ms. Romero's reply brief. If you look at the joint statement of agreed facts in the excerpt of record page 65, it was that Mr. Carrillo made her work separate from her co-workers. If you look at the complaint, there's nothing even about separation. Excerpt of record page 80, paragraph 12, it alleges unwelcome sexual advances, including sexual comments, invitations of a sexual nature, and unwanted sexual touching, which has nothing to do with the alleged separation. And then in plaintiff's own words at the supplemental excerpt of record page 7 in her deposition, she complained that he would separate her from her co-workers when she was talking with them. So the isolation claim is something, with all the cases that she cites and articles she cites, it's really misleading in that it attempts to imply that maybe sexual harassment happened because of the separation, or that there was opportunity for harassment. But there are no such facts, and she has not alleged any such facts. Let me ask you about your argument in your brief that Ms. Romero's error in not naming the proper Carlton party in her OEOC charge bars her claim. I think that's the argument that you're making. I'm just curious, why doesn't the substantially identical parties exception apply here? Because the equitable exceptions and the relation back rule really operate similarly. Here, we would be talking about equitable exceptions. But they operate to help a plaintiff who has made a mistake of identity and misnamed a defendant, and they operate to help that plaintiff by allowing the plaintiff to substitute the correct defendant for the incorrect defendant. And here, she did not seek to substitute. It seems that where Carlton Plants and Carlton Nursery shared the same owner and place of business, the usual concerns about notice, which usually underlie the requirement to name the proper party at the OEOC stage, aren't at issue here. Are you contending that the owner, I think, is it Bartsch, or the attorney for the parties did not know, in fact, that Romero was pursuing employment claims against the Carlton entities? No, we're not contending a lack of knowledge. But what we're contending is there's no way Carlton Plants could have thought there was a mistake when, in the court below, she sought to sue both Carlton Plants and Carlton Nursery. And she now says, on appeal, for the first time, I made a mistake. But in the lower court, she asserted several different legal theories against Carlton Nursery. That included piercing the corporate veil, integrated enterprise, alter ego doctrine. And then when she lost on all of those theories, she now says in front of this court, for the first time, I made a mistake. I never meant to name Carlton Nursery. I only ever meant to name Carlton Plants. So there wasn't a mistake. And equitable exceptions and relation back both require that there be a mistake to correct. So at trial, according to the record, once it was clear who had the employees, she still kept the other party in. There was an attempt to pierce the corporate veil, et cetera, et cetera, as if you had two defendants, right? Correct. So Krupski allows a substitution. And it even talks about mistakes of identity, where you may know the identities of two different parties. And then you choose mistakenly to sue B instead of A. But here, that's not what she did. She chose to sue both, her employer and her non-employer. And it claimed that she was entitled to seek damages against both. Did she, as a record, indicate that initially she sued the one without employees? Correct. And then she wanted to add the other one, and still kept the initial one. Is that correct? Correct. And then asserted the theories against Carlton Nursery, the non-employer. Let's talk about the Oregon State law claim. And I guess, first, do you argue that the district court was correct in its calculation that Ms. Romero's federal complaint filed on March 26, 2015 was filed 103 days? No, there was a math error by the district court. But as she concedes, she didn't bring Carlton Plants in within 90 days, as required after the bully right to sue letter. So Carlton Plants was brought in after the 90-day mark. So she concedes that the only way to proceed against Carlton Plants on this state law claim is for relation back. And she hasn't cited any cases that would permit addition of a party, as opposed to substitution of a party. And I wanted to just briefly address the four cases that she did cite. But just because it looks like we're then going on to relation back, and you talked about that already. And you argue that federal rule of civil procedure 15C only allows for a party to be substituted. It seems like that's what you're saying, and not added. And you're saying that's what Krupski says? Is that what you're saying? That that's what you're citing to Krupski for that? Krupski only allowed substitution. It had to do with a marketing agent that was named instead of the actual cruise line. And so they allowed substitution. They replaced the cruise line for the marketing agent. And then it went on to discuss mistake. The rest of the case dealt with the viewpoint of mistake, the plaintiffs versus the defendants. Well, I guess I'm just trying to find out what your authority is to say or to argue that a party can only be substituted and not added. OK, Your Honor. The authority for that would be the statute itself, which allows for changing of a party in the event of mistake of identity. OK. You agree, do you not? Or I want to know if you dispute that both the Carlton entities were on notice. They were both on notice. All right. It looks like the federal rule, section 15C, would allow relation back when the defendant knew or should have known that the action was being brought against it, but for Romero's mistake. But for the mistake, and that's crucial. So that's what your focus is. Yes. The Krupski court focuses on the fact that there has to be a mistake. And after discussing mistake, it goes on to talk about the difference between a mistake and a deliberate choice. And that's the language in Krupski where they talk about the difference between knowing the identity between party A and party B and mistakenly suing party B instead of A. Whereas here, she knew the identity of an employer and a non-employer and chose to sue both of them. So there was no mistake. So from your perspective, once there was a substitution, she had to drop the mistakenly named party. But she didn't do that. She kept the party in, presumably for the idea that there was some assets there that could be drawn upon, right? Correct, Your Honor. And now for the first time on appeal, she tries to reframe it as a mistake and raise that issue. You're saying that's fatal. Yes. The district court even looked for a mistake and did look for equitable exceptions. On page 20, acceptor record page 20, the district court looked for any allegations of mistake or any facts that would indicate mistake or confusion and found that there was none. And with respect to the other cases that she does cite that would, she argues, allow addition as opposed to substitution, none of those assist in this case. The first one is a Ninth Circuit case, Craig versus United States from 1969. And that case specifically states that the issue of whether a party can be added under FRCP-15 was not being decided. So it can't be precedent. The second case she cites is a 2017 unpublished decision. It's Kriegman. And in that case, it was not a Title VII. It was a bankruptcy fraud case. And the party that was allowed to be brought in was the individual owner of the correctly named bankrupt corporation. So there was a principal-agent relationship there and an individual joint liability relationship there. And she has already conceded on page 16 of the reply brief, there's no joint liability between Carleton Nursery and Carleton Plants. The other two cases that she cites, Joseph versus Elan Motorsports, that's a Seventh Circuit case. However, it's a substitution case. It's not an addition case. It dealt with a misnaming of Elan Corp instead of Elan Inc. And the plaintiff was allowed to swap Elan Inc. for Elan Corp. And then the last case that she cites is an unpublished Sixth Circuit District Court decision. And first of all, that court noted that they were going against all of the other district courts in that case in allowing addition. Second, it wasn't a Title VII case. It was a product liability case. And the party to be brought in was jointly liable with the other product manufacturer. So again, it's distinguishable because there's no joint liability between Carleton Nursery and Carleton Plants. The same would be true on the cases that she cites for addition with respect to equitable exceptions. She cites four different cases that she asserts allow addition of a defendant as opposed to substitution. And those cases, Ninth Circuit cases were Sosa, Chung, and Bernstein, and Antonio. Those first three cases, Sosa, Chung, and Bernstein, all dealt with a plaintiff who correctly named the employer but then failed to name principals and agents of the employer who were also jointly liable. So they were allowed to correct that mistake by bringing in the individual principals and agents. And that's when Title VII allowed individual liability. It no longer does. So that principal-agent relationship doesn't work here. Also, I should note that each of the three plaintiffs in those three cases did not have assistance of counsel in making their charges, and here, plaintiff did.  to apply equitable exceptions when there was not assistance of counsel. The last case she cites, Antonio v. Ward's Cove, there were two different entities, but again, it was a mistake and substitution case. So it was an umbrella corporation or joint venture that owned several different cannery employers, and it was a class action. And some of the plaintiff employees named the wrong cannery employer. So they were allowed to correct their mistake and bring in the correct cannery employer. So it's mistake and substitution. So counsel, given the inapposite nature of the cases cited by your opponent, where do we find ourselves here now that you did have, if you will, the correct party added, the other one was not removed. With respect to the correct party, do you contend that under 15C, that was not permissible? Correct, yes. Okay. If it had been permissible, would, is there any authority for the relation back doctrine in this case? Is there any authority? If 15C did permit an addition in this case, the correct party, what do we do with the relation back issue? Would it relate back? Is there any authority for that, for the new party? I'm not aware of any authority that allows a new party to be brought in. Okay, so from your perspective, under 15C, they had no authority to bring in the correct party. And even if they had, the actions wouldn't relate back and therefore you have a timeliness problem. They didn't have, yes. They didn't have any authority to add in the incorrect party. Okay. Are there any other questions that the court would like me to address? I just wanna make sure I heard correctly. Is it your position that the decision to sue Carlton Nursery Company was a strategic decision rather than a simple mistake? Correct. Was there any strategic? Correct. And what was that strategic decision? It has to be a strategic decision when there are several legal theories argued to the district court as to why you should be able to pursue Carlton Nursery for a mistake. And the district court actually spent a better half of its opinion addressing all of those and ultimately finding that there was no legal theory for Carlton Nursery to be liable. And they nevertheless, the plaintiff nevertheless wanted Carlton plants to be added or stay in the case rather than deleted. For the first time on appeal, that is now what she is trying to reframe her action as. But in the court below, she tried to sue both, purposely tried to sue both and claimed that she was entitled to damages from both. But the rule doesn't only allow substituting. It says change party. It does say change, but I'm not aware of any case other than the four that are distinguishable that has allowed an addition as opposed to a substitution. Change has almost always been interpreted to mean substitution. And I think that's really because the rule is meant to correct a mistake. That's why the rule exists. If you look at the 1991 committee notes, you see that it was meant for cases such as a mistaken identity or a misnomer. And that's not what we have in this case. So a substitution would be a correct remedy for a mistake. Other questions? I think not. Thank you counsel. Thank you very much. So you have a little bit of rebuttal time and I see you're from Pendleton. That's where I was born. So we have that in common. Very nice. You must get in touch with me. It has nothing to do with this case, but that's for. You never know. May I? Please. Okay. Regarding the issue of the four or five exceptions that the Ninth Circuit has recognized, Carlton Plants has really only argued one of those. And that is the one that Ms. Romero did not argue, which is the exception for parties that are substantially identical. We do not. But counsel, your opponent indicates that, I assume she's saying, argue one. Say that's okay. You didn't dismiss the other party. You went ahead and tried to pierce the corporate bail and so on. So that's not a mistake. It's a strategy, right? No, it was not a strategy. Not at all. It was a mistake because Ms. Romero wanted to sue her employer and that's who she thought she had sued. But you kept that other employer, as she thought, in when you knew that somebody else was involved. And that's because there is no obligation for her to dismiss that other party until she determines that they're not the correct party or that there might be joint liability. And in Krupski, the court was very specific about delay. The plaintiff in that case did not add or change, substitute the new party for months. I think it was nine months after she became aware. And the court said that was okay. But we decided to go ahead and add the new party and proceed. And now we have determined that Carleton Nursery does not have joint liability with Carleton Plants, and that is why we did not appeal the decision regarding Carleton Nursery. But the employer, that's the key here, is that Ms. Romero intended to sue her employer. And I'd also like to point out that- I think we have your point. We've let you run over a little time. So then right now, what you just said at the end seemed to sound like a strategy instead of a mistake. So- I'm sorry? What you just said here at the end, that we decided and to wait, that that's a strategy and not a mistake? Oh, I'm sorry. Only after we received the answer from the defendant that said, we are not your employer from Carleton Nursery. And in that answer, Carleton Plants asserted affirmative defenses. They went through the entire- I want to point out, they went through the entire BOLI one year of interviews. And BOLI itself still issued its decision in the name of Carleton Nursery. Because Carleton Nursery never made any effort to inform anybody that there had been a mistake. And there was a chance to do that long before this occurred. But I also want to point out that- One second, let me just- Any questions by my colleagues? Did you get your answer? Yes, thank you. Okay, do you have any questions, Judge Corman? No. Okay, I think we're done. We thank you very much for your argument for both counsel. Thank you, Your Honor. The case just argued is submitted.
judges: M. Smith, Murguia, Korman